# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

FLYERS RIGHTS EDUCATION FUND, INC.  )
1530 P Street NW, 2nd Floor,  )
Washington, D.C. 20005  )
  )
  )
-and—  )
  )
PAUL HUDSON  )
4411 Bee Ridge #274  ) Case No. _____
Sarasota, Florida 34233,  )
  )
     Plaintiffs  )
  )
     v.  )
  )
FEDERAL AVIATION ADMINISTRATION  )
800 Independence Ave., S.W.  )
Washington, D.C. 20591,  )
  )
     Defendant  )
_____)

## COMPLAINT FOR INJUNCTIVE RELIEF
### (Freedom of Information Act)

      1.      Plaintiffs Flyers Rights Education Fund, Inc. ("FlyersRights") and Paul

Hudson bring this action under the Freedom of Information Act, 5 U.S.C. §552 ("FOIA"), to

compel the production by the Defendant, Federal Aviation Administration ("FAA"), of

documents that would show the basis on which The Boeing Company is seeking a decision

by the FAA to certify, to be put back into service in U.S. air transportation, the Boeing

Company Model 737-8 and Model 737-9 series  ("737 MAX")  aircraft.

      2.      On October 29, 2018, a 737 MAX operated by Lion Air crashed after taking

off from Jakarta, Indonesia, crashed killing all 189 passengers and crew members on board.

On March 10, 2019, a 737 MAX operated by Ethiopian Airlines similarly crashed minutes after takeoff from Addis Ababa, Ethiopia, killing all 157 passengers and crewmembers on board.

3.     On March 13, 2109, the FAA issued an emergency order prohibiting operation of the 737 MAX aircraft by U.S. certificated operators. As alleged in more detail below, after reports identified flaws in the aircraft's flight control system as the likely cause of the crashes, Boeing has submitted proposed solutions and fixes to the FAA, seeking recertification of the airworthiness of the aircraft, that is, ungrounding.

4.     Boeing has stated publicly that it expects the FAA to recertify and unground the 737 MAX later this month or in January; and FlyersRights has received the same prediction from the senior responsible FAA official.

5.     Although the FAA Administrator has recently stated publicly that the timeline for recertification will extend into 2020 and that the agency will take the necessary time to evaluate Boeing's proposed fixes to software, equipment and training and other elements, the FAA has not publicly disclosed anything Boeing has actually submitted to the agency.

6.     It is essential that independent experts, the media and the public be able to assess the proposals made and information submitted to the FAA by Boeing and any factual analysis undertaken by the FAA so far.  As detailed below, it would be impossible for independent technical experts to evaluate any FAA decision to unground the 737 MAX unless they can obtain access to the technical submissions made by Boeing.

7.     FlyersRights itself, whose president, Mr. Hudson, sits on the FAA Aviation Rulemaking Advisory Committee, also needs this information urgently in order properly to perform its responsibilities as a member of that Committee and in order to perform its

function of educating and informing the public and carrying out its mission of advocating for the rights of airline passengers.

8.      Plaintiffs do not seek any documents revealing the internal deliberations of the FAA, but only the factual information that has been submitted to and developed by the FAA.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 5 U.S.C. §552(a)(4)(B) and 28 U.S.C. §1331.

10.     Venue in this Court is proper under 5 U.S.C. §552(a)(4)(B) and 28 U.S. C. §1391(e).

## PARTIES

11.     Plaintiff FlyersRights is a District of Columbia nonprofit corporation recognized as an organization exempt from taxation under section 501(c)(3) of the Internal Revenue Code of 1986 as amended. FlyersRights has approximately 60,000 members and educates the public about issues affecting airline passengers and advocates for the interests of airline passengers.

12.     Plaintiff Hudson is a resident of Florida and is the President of FlyersRights. In that capacity he has, since 1993, served as member of the FAA's Aviation Rulemaking Advisory Committee, representing the airline passengers and the general public on air safety matters.

13.     Defendant FAA is a federal agency within the meaning of FOIA, 5 U.S.C. §552(f)(1), and is headquartered in Washington, D.C. The FAA has possession, custody and control of the records to which Plaintiffs seek access.

3

## FACTUAL ALLEGATIONS

### 1.  Factual Background

14.    On October 29, 2018, a 737 MAX operated by Lion Air on Flight JT610 crashed after taking off from Jakarta, Indonesia, killing all 189 passengers and crew members on board.

15.    On March 10, 2019, a 737 MAX operated by Ethiopian Airlines on Flight ET302 similarly crashed minutes after takeoff from Addis Ababa, Ethiopia, killing all 157 passengers and crewmembers on board.

16.    On March 13, 2109, the FAA issued an emergency order prohibiting operation of the 737 MAX aircraft by U.S. certificated operators.   Federal Aviation Administration, *Operators of Boeing Company Model 737-8 and Boeing Company Model 737-9 Airplanes: Emergency Order of Prohibition*, 84 Fed. Reg. 9705 (March 18, 2019). The agency noted that information developed at that point "indicates some similarities between the  ET302 and JT610 accidents that warrant further investigation of the possibility of a shared cause…."  84 Fed. Reg. at 9706.

17.    The 737 MAX had engines that did not fit under the wings of the older version of the airplane. Boeing pigeonholed the new engines by taking certain steps to mount them forward of the wings that generated greater lift for the aircraft creating a tendency for the nose to pitch up.  To make the aircraft feel similar to older models, Boeing installed a "Maneuvering Characteristic Augmentation System" ("MCAS"), that was supposed to compensate by pushing the nose of the aircraft down.

18.     As a result of fundamental design flaws in the MCAS, and Boeing's failure properly to inform pilots about and train them on its operation, the MCAS could pull down the nose of the airplane down sharply, suddenly and repeatedly, with pilots unaware of why that is happening or how to override it.

19.     The original certification of the 737 MAX had been rushed by the FAA under pressure from Boeing motivated by Boeing's desire to win a lucrative order from a major carrier.

20.     Preliminary investigations of the two fatal 737 MAX crashes immediately pointed to problems with the MCAS as the likely cause of the crashes.  On April 12, 2019, the FAA met with safety representatives of the three U.S. carriers with the 737 MAX in their fleets, and reviewed preliminary findings to that effect and an overview of software enhancements expected to be submitted by Boeing; and an overview of pilot training.

21.     At a hearing on June 19, 2019 held by the U.S. House Committee on Transportation and Infrastructure, Subcommittee on Aviation, Captain Chesley B. "Sully" Sullenberger III, a national hero and a pilot with 35 years of experience in the military and commercial aviation, testified that, "In adding MCAS, Boeing added a computer-controlled feature to a human-controlled airplane but without also adding to it the integrity, reliability and redundancy that a computer-controlled system requires.. . . . It is clear that the original version of MCAS was fatally flawed and should never have been approved."

22.     The FAA convened a Technical Advisory Board ("TAB") to make recommendations as to criteria for returning the 737 MAX to service.  In April 2019, the FAA also established an international Joint Authorities Technical Review (JATR) to evaluate the prior certification of the automated flight control system on the 737 MAX.

23.     In September 2019, the National Transportation Safety Board issued a statement confirming that the MACS did not allow pilots adequately to understand what was happening in critical situations.

24.     On October 11, 2109, the JATR issued its report, finding significant flaws in the process for the original certification of the 737 MAX, failure to evaluate the MCAS in conjunction with other systems, failure sufficiently to update changes to the MCAS during the certification process, undue authority afforded by the FAA to Boeing representatives during that process and a lack of human resources at the FAA to properly evaluate the safety of the 737 MAX.

25.     On October 24, 2019, Mr. Hudson met with Ali Bahrami, FAA Associate Administrator for Aviation Safety, who told Mr. Hudson that the FAA expected to recertify (unground) the 737 MAX before the end of 2019 and that the agency had no intention of making public the technical submissions from Boeing and other technical information on which it planned to rely.

26.     In October 2019, text messages between Boeing employees were disclosed, revealing that a Boeing test pilot misled the FAA about the MCAS during the original certification process.

27.     On November 11, 2019, Boeing issued a public statement stating that "Boeing continues to target FAA certification of the MAX flight control software updates during this quarter. Based on this schedule, it is possible that the resumption of MAX deliveries to airline customers could begin in December, after certification, when the FAA issues an Airworthiness Directive rescinding the grounding order."

28.     On November 15, 2019, FAA Administrator Stephen Dickson released a video to FAA employees stating that despite "a lot of pressure to return this aircraft to service quickly," "I want you to know that I want you to take the time you need and focus solely on safety."

29.     On December 11, 2019, a member of the FAA TAB, in testimony before the House Transportation and Infrastructure Committee, described in general terms four design changes to the MAX flight control system that had already been submitted by Boeing to the FAA and stated that, although the "TAB still has work to do," "our team feels that the changes made to the flight control software in the B737 MAX should vastly improve the safety of the aircraft…."

30.     FAA Administrator Dickson, in answering questions at the same hearing, indicated that the steps needed to be completed before the 737 MAX is ungrounded would likely push that event into 2020.

31.     At the same hearing and in press reports it was revealed that the FAA had made an internal assessment of the MCAS shortly after the Lion Air crash, that there could be 15 additional crashes of the 737 MAX over the expected life of the plane costing up to 2,900 additional deaths, but did not ground the plane.

32.     The most recent press reports quote FAA sources as stating that the ungrounding could now occur as early as mid-February.

### 2.  FlyersRights' FOIA Request

33.     FlyersRights has been working with several independent technical experts who are prepared to provide an independent, objective assessment of any decision by the FAA to unground the 737 MAX.  These experts include Captain Sully Sullenberger;

Gregory Reed Travis, a computer software expert with 40 years of experience who is also a

pilot with 30 years and 2,300 hours of flight experience; and Javier de Luis, an aeronautical

engineer and scientist with 30 years of experience who taught at MIT.

34.     Each of those experts has informed FlyersRights that it will be impossible for

them to provide to the public and other stakeholders and interested parties, any independent

assessment of the FAA's decision without being able to review the technical information

and related testing submitted to the FAA.

35.     The Association of Flight Attendants, representing nearly 50,000 flight

attendants working for 20 different airlines, has informed FlyersRights that they believe that

multiple independent reviews of the technical information submitted by Boeing to the FAA

are essential to the process of reassuring their members and the public of the safety of the

737 MAX.

36.     On November 1, 2019, Mr. Hudson on behalf of FlyersRights, submitted to

the FAA via e-mail a FOIA request, attached hereto as Exhibit A,  requesting various

documents, including--

> --Records of all software changes, including MCAS, that Boeing has submitted to the
> FAA for the 737 MAX since October 28, 2019
> --All software changes for the Boeing 737 MAX, including MCAS, that were
> proposed, required or requested by the FAA since October 29, 2019
> --Records describing the solutions or fixes to the flaws in the MCAS that were
> proposed by Boeing or any government agency or submitted to the FAA, JATR or
> TAB by Boeing.

37.     The FlyersRights FOIA requested expedited treatment of the FOIA request.

FOIA provides for expedited processing in cases of "compelling need."  5 U.S.C.

§552(a)(6)(e).   Department of Transportation regulations provide for expedited processing

"whenever a compelling need is demonstrated and DOT determines that the compelling

need involves" either "[c]ircumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual" or a request "made by a person primarily engaged in disseminating information, with a time urgency to inform the public of the actual or alleged Federal Government activity."  49 C.F.R. §7.31(c)(1)

38.     The FlyersRights FOIA request stated that expedited treatment "is justified because the records requested involve threats to the lives of millions of airline passenger and the general public.  The FAA may decide to unground the Boeing 737 MAX within the next few months.  A normal minimum processing time of one to two years would render this request futile…."

39.     In the FOIA request, FlyersRights also sought a waiver of search and duplicating fees under 5 U.S.C. §552(a)(4)(A)(iii), on the basis that disclosure would contribute to the understanding of the public at large and would not further any commercial interests of the requester.

40.     FlyersRights has received no response at all to its FOIA request, from the FAA as of the date hereof.

## COUNT I

41.     The allegations of paragraphs 1 through 40 are incorporated by reference as if set forth in full herein.

42.     Pursuant to FOIA, 5 U.S.C. §552(a)(6)(A)(i) the FAA's response to FlyersRights' November 1, 2019 FOIA request was due within 20 working days of FAA's receipt of he request.  Such response was due on or before November 29, 2019.  Within that time period, FAA was required to determine whether to comply with the request and notify

FlyersRights of that determination, the reasons therefor and the right to appeal any adverse determination. FAA has failed to provide to FlyersRights any written notice of any extension of the 20-day period under 5 U.S.C. §552(a)(6)(B).

43.     Further, under FOIA, 5 U.S.C. §552(a)(6)(e)(ii)(I) and FAA 's own regulation, 49 C.F.R. §7.31(c)(4), FAA was required to notify FlyersRights within ten calendar days whether to grant the request for expedited treatment.  That notification was required to be made on or before November 15, 2019.

44.      FAA has failed to comply with the applicable time limits in FOIA and FAA's regulations for notifying FlyersRights of whether its request for expedited request will be granted and for making a determination of that request.

45.     By reason of FAA's failure to comply with the applicable time limits, as set forth in paragraphs 41-43, FlyersRights is deemed, pursuant to 5 U.S.C. §552(a)(6)(C)(i), to have exhausted its administrative remedies with respect to its November 1, 2019 FOIA request.

46.     On information and belief, the requested records cannot lawfully be withheld from FlyersRights pursuant to any of the exemptions set forth in FOIA, 5 U.S.C. §552(b).

47.     For the reasons set forth in paragraphs 42 through 46, the FAA has, in violation of FOIA, wrongfully withheld the records requested by FlyersRights in its November 1, 2019 FOIA request and continues to refuse to disclose such records to FlyersRights, all in violation of FOIA.

**WHEREFORE,** Plaintiffs FlyersRights and Paul Hudson pray that this Court:

1.  Enjoin Defendant FAA from withholding FlyersRights' request for expedited treatment of its FOIA request;

2.  Order the FAA to conduct a search for any and all responsive records to FlyersRights' FOIA request using search methods reasonably likely to lead to discovery of all responsive records;

3.  Order the FAA to produce, on an expedited basis, any and all non-exempt responsive records and a Vaughn index of any responsive records withheld  under a claim of exemption;

4.  Enjoin the FAA from continuing withhold any and all non-exempt responsive records;

5.  Order the FAA to grant FlyersRights' request for a fee waiver;

6.  Award FlyersRights its costs and attorneys' fees for this action; and

7.  Grant such other an further relief as the Court deems just and proper

Dated:  December 16, 2019                                Respectfully submitted,

/s/ Joseph E. Sandler

Joseph E. Sandler (DC Bar No. 255919)
Christina Bustos (*pro hac vice* application forthcoming)
SANDLER REIFF LAMB ROSENSTEIN &
BIRKENSTOCK, P.C.
1090 Vermont Ave., N.W.  Suite 750
Washington, D.C. 20005
Tel: (202) 479-1111
Fax: (202) 479 -1115
sandler@sandlerreiff.com